UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| N. AM. BUS. ASS'N, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:22-CV-85-REW-HAI |
| v. | ) | |
| | ) | ORDER ON ALL PENDING MATTERS |
| UNITED MERCH. SERVS. CLUB, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is Plaintiff North American Business Association's motion for summary judgment. *See* DE 60 (Motion); DE 60-1 (Memorandum in Support). Defendant Nicholas Ahlf, proceeding *pro se*, responded, of sorts, in opposition. *See* DE 61. Plaintiff replied. *See* DE 62. The matter is now ripe for review. For the following reasons, the Court **GRANTS** Plaintiff's motion, which essentially is unopposed under Rule 56. This ruling resolves all pending matters.

## I.  Background

### a.  Facts

Plaintiff North American Business Association, LLC d/b/a United Merchant Services Club ("NABA") is a Nevada limited liability company that owns a business offering payment systems support. *See* DE 1 (Complaint). NABA was founded in 2009 by Jonathan Ahlf, who was both the president and sole employee of the company for many years. *See id*. at ¶ 32. As NABA flourished, Jonathan Ahlf enlisted the help of his step-son, Defendant Nicholas Ahlf in 2019. *See id*. at ¶¶ 38-39. Defendant Ahlf was named Senior District Manager. In this capacity, Defendant Ahlf was responsible for client interfacing and account management, which gave him access to NABA's

1

internal client information—including client lists, phone numbers, and email addresses—as well as sensitive business information such as profit margins, rates, residual dollar amounts, equipment, payment platforms, and marketing materials. Defendant Ahlf was received a company email address, administrative privileges to NABA's website, access to client processing platform accounts, and connections to NABA's clients. *See id.* at 45-47. The duo ran NABA successfully until Jonathan Ahlf died on September 2, 2021. After Jonathan Ahlf's death, his parents, Charles and Marilyn Ahlf, were named as co-administrators of his estate and took over the operation of NABA. *See id.* at ¶¶ 51-54.

Eleven days after Jonathan Ahlf's death, Defendant Ahlf registered a separate entity with the Nevada Secretary of State, problematically named UNITED MERCHANT SERVICES CLUB, LLC a name virtually identical to NABA's trademarked name. Defendant Ahlf began reaching out to NABA's clients and transferring their accounts from NABA to his own business. Despite acting for his own business, Defendant Ahlf continued to use the name "United Merchant Services Club," his NABA phone number, as well has his NABA email address. *See generally* DE 1 at ¶¶ 55-60.

Eventually, some clients affected by Defendant Ahlf's actions discovered the true situation and informed NABA, who, in turn, immediately terminated Defendant Ahlf. Despite his termination, Defendant Ahlf continued contacting NABA's clients using his NABA contact information under the name UNITED MERCHANT SERVICES CLUB, LLC. NABA demanded that Defendant Ahlf discontinue this behavior, but he refused to do so. *See generally* DE 1 at ¶¶ 62-65; 69-71.

### b. Procedural History

To recover, NABA filed the instant action on April 14, 2022 against Defendant Ahlf and Defendant UMSC Services Club, LLC ("Defendant UMSC). *See* DE 1. In the Complaint, NABA

made eight claims total, six of which were against both Defendants—Count 1: federal unfair competition in violation of the Lanham Act; Count 2: false advertising in violation of the Lanham Act; Count 3: common law unfair competition; Count 4: tortious interference with contracts; Count 5: tortious interference with prospective business advantage; and Count 8: unjust enrichment. *See* DE 1 at ¶¶ 82-109; 124-26. The remaining two claims were made against Defendant Ahlf alone—Count 6: breach of fiduciary duty and Count 7: conversion. *See id*. at ¶¶ 110-23. NABA asked for an injunction blocking Defendants from using the infringing UNITED MERCHANT SERVICES CLUB, LLC mark and from using NABA's client lists, contacting their customers using the infringing mark, using and/or disseminating NABA's trade secrets, and interfering with NABA's customers. NABA also asked for an order requiring Defendants to take reasonable steps to prevent any false impression of an association between NABA and Defendant UMSC, as well as an order requiring Defendants to contact clients to inform them that their accounts were moved to a company that was not affiliated with NABA. Finally, NABA asked for damages, treble damages, compensatory damages, punitive damages, and the return of property. *See id*. at ¶¶ A-I.

Defendant Ahlf filed an answer, *pro se*, on his own behalf. *See* DE 15 (Answer).  Defendant UMSC never answered, nor has Defendant UMSC retained counsel. The clerk entered default against Defendant UMSC on July 25, 2022. *See* DE 19 (Clerk Entry of Default). NABA then filed a motion for default judgment against Defendant UMSC, *see* DE 20, and moved for a temporary restraining order, *see* DE 21. The Court referred both motions to United States Magistrate Judge Hanly A. Ingram. *See* DE 22 (Order). Judge Ingram thoroughly evaluated both motions (both were unopposed) and recommended that a default judgment be granted against Defendant UMSC on Counts 1-3 and denied on Counts 4, 5, and 8. *See* DE 34 at 22 (Recommended Disposition). Judge Ingram also recommended that Defendant UMSC be permanently enjoined from infringing on

NABA's trademark and engaging in false advertising, unfair competition, and deceptive trade practices in connection with the infringing "UNITED MERCHANT SERVICES CLUB, LLC" mark. *Id*. After the objection period passed without any objections from the parties, the Court adopted Judge Ingram's Recommended Disposition. *See* DE 43 (Order).

The Court subsequently held a damages hearing on January 5, 2023, in light of the Counts adjudicated in the DE 43 Order. *See* DE 56 (Minute Entry). The Court awarded damages as identified in DE 56, holding the fee ruling for a final decision post-hearing. *Id*.

On April 7, 2023, Plaintiff moved for summary judgment on the federal unfair competition, common law unfair competition, false advertising, and breach of fiduciary duty claims against Defendant Ahlf.[1] *See* DE 60 (Motion). Defendant Ahlf responded to Plaintiff's motion with a one-line, non-substantive filing. *See* DE 62 (Ahlf Response). Plaintiff replied. *See* DE 62.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts"

---

[1] While United Merchant refers to Defendant Ahlf as "the remaining defendant," *see* DE 60-1 at 2, Counts Four, Five, and Eight remain pending against Defendant United Merchant. *See* DE 43.

showing a "genuine issue" for trial. *Id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co*., 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC,* 187 F. App'x 428, 444-45 (6th Cir. 2006). Failure to respond has a cost. *See* Rule 56(e)(2)-(3).

## III.   Analysis

### a.   Defendants' Responses to the Pending Motion

The Court will first address Defendant UMSC's failure to respond to the pending motion. This District's Local Rules state that a nonmoving party's "[f]ailure to timely respond to a motion may be grounds for granting the motion." *See* LR 7.1(c). Nonetheless, even if the non-moving party fails to respond, "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that [it] has discharged" its initial burden. *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 381 (6th Cir. 2011) (citing *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir.1991)). Thus, if a party fails to respond to a pending summary judgment motion, a court may not use that failure, alone, to justify granting the motion; the merits of the motion must be examined under Federal Rule of Civil Procedure 56(c). *Id.* at 65. The Court may

5

consider facts undisputed, per Rule 56(e)(2), and may grant judgment if the movant is entitled to it. *See id.* 56(e)(3). The Court will apply the rubric here.

While Defendant Ahlf did respond to the motion, he does nothing to contest NABA's arguments or the way NABA marshalled the record. His response states, in its entirety:

> I Nicholas Ahlf herby *(sic)*, file this Motion to Dismiss Summary Judgment, pro se, stating as follows.
>
> 1. The Plaintiff is trying to make all legal justification based off of the business case which a Summary Judgement has been issued, There are two separate proceedings and be handled as so.
>
> Wherefore, I hereby request this motion for Summary Judgement be dismissed.

*See* DE 61. "In order to preclude the granting of summary judgment, the non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). While a pro se litigant is typically entitled to leniency, "the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage[.]" *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citing *Tucker v. Union Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788-89 (6th Cir. 2005)). While the Court will review the merits of NABA's summary judgment arguments, the deficiency in Defendant Ahlf's non-response results in the Court considering NABA's factual depictions, properly supported, as undisputed for purposes of the motion.

### b. Defendant Ahlf's Individual Liability

NABA first argues that Defendant Ahlf is jointly and severally liable for the unfair competition and false advertising committed by Defendant UMSC, and for the damages already awarded against Defendant UMSC. *See* DE 60-1 at 8-10; 29-33. "Corporate officers may be held personally liable for Lanham Act violations." *Simmons v. Cook*, 701 F.Supp.2d 965, 989 (S.D.

Ohio 2010) (citing *State Farm Mut. Auto Ins. Co. v. Sharon Woods Collision Center, Inc.*, 2007 WL 4207158, at *1 (S.D. Ohio Nov. 26, 2007)). "A corporate officer who is the 'sole shareholder, officer, and director of the corporate infringer is personally liable. Such liability does not hinge upon the piercing of the corporate veil.'" *Id*. (quoting 3, J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 25:24 (5th 2005)).

> "A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort. This principle applies where the conduct constitutes unfair competition." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). "Employees of corporations are not shielded from individual liability under the Lanham Act solely because their actions were taken within the scope of their employment." *Hair Assocs v. National Hair Replacement Servs.*, 987 F.Supp. 569, 590 (W.D. Mich. Sep. 11, 1997) (quoting *Two Men & a Truck/International v/ Two Men & a Truck/Kalamazoo*, 1995 U.S. Dist. LEXIS 11295, at *4 (W.D. Mich. July 24, 1995)). "Put simply, a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation." *Hair Assocs.*, 987 F.Supp. at 591.

*Polymeric Resources Corporation v. Pounds of Plastic, LLC*, Civil No. 3:20-cv-00013-GFVT-EBA, 2022 WL 4227512, at *6 (E.D. Ky. Sept. 13, 2022). Limited liability companies are treated the same as corporations for purposes of analyzing individual liability. *See Dzurilla v. All American Homes, LLC*, Civil Action No. 5:07-CV-239-KSF, 2010 WL 55923, at *3 (E.D. Ky. Jan. 4, 2010) (collecting cases). This district has held that the sole members of an LLC can be held jointly and severally liable for damages along with a defendant LLC. *See Joe Hand Promotions, Inc. v. Thatcher*, No. 5:18-CV-0647-MAS, 2021 WL 2627383, at *3 (E.D. Ky. Mar. 29, 2021).

Upon review of the record, there is no genuine dispute of material fact as to whether Defendant Ahlf is individually liable for the infringement and falsity committed by Defendant UMSC. Defendant Ahlf is the sole, controlling member of Defendant UMSC. *See* DE 60-5 at 7 (Plaintiff's Requests for Admissions). He alone committed the acts that resulted in the infringement of NABA's protected mark. *See* DE 60-6 at 17-19 (Defendant Ahlf's Deposition).

The corporate veil offers no protection against individual wrongs. Under current Circuit law, it is clear that Defendant Ahlf can be held personally, jointly, and severally liable for Defendant UMSC's infringement of NABA's trademark and for any damages awarded against Defendant UMSC.

### c. Unfair Competition Under Section 43(a) of the Lanham Act and Kentucky Law

NABA next argues that Defendant Ahlf engaged in unfair competition in violation of Section 43(a) of the Lanham Act and Kentucky law. Under the Lanham Act:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person
>
> shall be liable in a civil action[.]

15 U.S.C. § 1125(a)(1)(A). To prevail, NABA must show that (1) it held the UNITED MERCHANT SERVICES CLUB trademark; (2) it did not consent to Defendant Ahlf's use of the UNITED MERCHANT SERVICES CLUB, LLC mark; and (3) Defendant Ahlf's use of the infringing mark was likely to cause confusion among relevant consumers. *See Eat BBQ LLC v. Walters*, 47 F.Supp.3d 521, 528 (E.D. Ky. 2014). "The analysis for Lanham Act claims of trademark infringement and unfair competition is identical to the analysis for Kentucky common law claims for the same." *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 295 F.Supp.3d 756, 765 (W.D. Ky. 2018).

### i. Validity of NABA's Trademark

Beginning with the first element, a "mark is presumed valid when it becomes 'incontestable' under 15 U.S.C. § 1065. A defendant then has the burden of rebutting its validity." *La Bamba Licensing, LLC*, 295 F.Supp.3d at 765. There is nothing in the record to support, nor does NABA argue, that the UNITED MERCHANT SERVICES CLUB mark was "incontestable" under 15 U.S.C. § 1065. Rather, NABA argues that it "possesses federal and state common law rights in the UNITED MERCHANT SERVICES CLUB mark." *See* DE 60-1 at 19. "A party establishes a common law right to a trademark only by demonstrating that its use of the mark was 'deliberate and continuous, not sporadic, casual or transitory.'" *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054-55 (6th Cir. 1999) (quoting *La Society Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir. 1974)). "Common law trademark rights develop when goods bearing the mark are placed in the market and *followed by continuous commercial utilization.*" *McDonald's Corp. v. Burger King Corp.*, 107 F.Supp.2d 787, 790 (E.D. Mich. 2000) (quoting *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp.96 113 (S.D.N.Y. 1989) (emphasis in original). "Use sufficient to establish common law trademark rights must be sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark. * * * The activities must have substantial impact on the purchasing public." *Id*. (citation and internal quotation marks omitted, punctuation as in original).

NABA has used the UNITED MERCHANT SERVICES CLUB mark continuously since August 8, 2018. *See* DE 1 at ¶ 18; DE 60-1 at 20. The UNITED MERCHANT SERVICES CLUB mark and accompanying logo appear on the company's Facebook page, *see* DE 60-7, the company's website, *see* DE 60-8, and the company's business cards, *see* DE 60-9. Judge Ingram

thoroughly examined the relevant facts in finding that NABA has a common-law trademark. *See* DE 34 at 6-8. The Court incorporates the analysis here and also finds that NABA has a protected common-law trademark for UNITED MERCHANT SERVICES CLUB.

### ii. Consent

NABA must next show that that Defendant Ahlf did not have consent to use the UNITED MERCHANT SERVICES CLUB mark. This prong is easily proven. Defendant Ahlf was asked repeatedly to cease using the infringing mark once NABA learned about his behavior. *See* DE 1 at ¶¶ 69-71. Additionally, NABA demanded that Defendant Ahlf cease using the infringing mark when he was terminated from his position. *See* DE 60-11 (Termination Letter) ("By this letter, NABA Services is asking that you cease and desist from using that name and conducting business in a manner that infringes upon its rights.") Defendant Ahlf's response does nothing to dispute NABA's argument that he did not have consent to use the infringing mark. Therefore, the remaining question is whether Defendant Ahlf's use of the infringing mark was likely to cause confusion among relevant customers.

### iii. Likelihood of Confusion

This district has discussed the third and final prong in *Eat BBQ LLC*:

"Whether there is a likelihood of confusion is a mixed question of fact and law." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir.1996) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988)). First, the Court must consider the "fact[s] supporting the likelihood of confusion factors" and then, secondly, answer the legal question of "whether those foundational facts constitute a 'likelihood of confusion.'" *Id*. (citing *Wynn*, 829 F.2d at 1186 (additional citations omitted)). In determining whether Walters' use of the marks likely caused consumer confusion, the Court is to consider eight factors: 1) strength of the plaintiff's mark; 2) relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. *Maker's Mark Distillery, Inc.*, 679 F.3d at 419 (citing *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S. Ct. 231, 74 L.Ed.2d 182

(1982)); *Tumblebus Inc. v. Cranmer*, 399 F.3d 754 (6th Cir.2005); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir.1997). Finally, confusion is to be evaluated "with respect to the relevant consumer market" which are defined as "potential buyers of the 'junior' product.'" *Marker's Mark Distillery, Inc.*, 679 F.3d 419 (citing *Leelanau Wine Cellars, Ltd.*, 502 F.3d 518).

47 F.Supp.3d at 529-30. When "marks use absolutely identical language to sell a nearly identical service, the likelihood of confusion must be considered great. As Professor McCarthy wrote, cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are open and shut and do not involve protracted litigation to determine liability for trademark infringement." *Wynn Oil Co.*, 839 F.2d at 1190-91 (quoting 3 J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 23:3 (2d ed. 1984) (internal alterations and quotation marks omitted)).

Here, in addition to the fact that the marks are identical, and therefore "the likelihood of confusion must be considered great," an analysis of the eight factors outlined in *Eat BBQ LLC* leads to the inevitable conclusion that Defendant Ahlf's use of the UNITED MERCHANT SERVICES CLUB mark would lead to confusion among the relevant consumers. Beginning with the first factor, "[t]he strength of a mark is a factual determination of the mark's distinctiveness." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985). When assessing strength, the trademark will be placed in one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997) (citing *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116-17 (6th Cir. 1996)). "These categories constitute a spectrum of increasing strength and are not perfectly discrete . . . Fanciful or arbitrary marks are the strongest and most distinctive." *Id.* "A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine

the nature of the goods." *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984) (quoting *Miller Brewing Co. v. G. Heileman Brewing Cor.*, 561 F.2d 75, 79 (7th Cir. 1997)). Suggestive marks are "inherently distinctive and are protectable so long as the putative owner has actually used the mark." *Tumblebus*, 399 F.3d at 761. NABA's mark is suggestive; the mark suggests a relation to merchants and businesses but does not necessarily connote a business that provides retail and e-commerce businesses with credit and debit card payment systems. Further, NABA has used the mark consistently since 2018. As a suggestive mark, UNITED MERCHANT SERVICES CLUB is entitled to protection.

Second, the goods are clearly related. Both NABA and Defendant UMSC provide identical services: connecting businesses with credit and debit card payment systems. Third, aside from the word "LLC," the infringing UNITED MERCHANT SERVICES CLUB, LLC mark is identical to NABA's protected mark: UNITED MERCHANT SERVICES CLUB. Fourth, NABA has shown evidence of one instance proving actual confusion among consumers. A signed affidavit from the owner of Pineville Pawn Shop, a former NABA customer, details how the pawn shop's account was unknowingly switched from NABA to Defendant UMSC and the owner "failed to realize [he] had been switched over to a different company because of [Defendant Ahlf's] false representations that he was still working for NABA and because the names for NABA and [Defendant UMSC] are so confusingly similar." *See* DE 21-1 (Fugate Affidavit).  This signals confusion as the very point of similarity.

Fifth, both companies use the same marketing channels. Defendant Ahlf admitted that Defendant UMSC targeted the same clients as NABA's. *See* DE 60-5 at 7;[2] DE 60-6 at 13-14.[3] Both companies competed for customers in the South and Midwest. *See* DE 60-6 at 12. Both companies also primarily marketed and communicated with customers via email, phone calls, and face-to-face communications. *See* DE 60-5 at 6-7.

Sixth, even the most careful consumer exercising the highest degree of care would still plausibly assume that the two companies are affiliated with one another. "[C]onfusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the instrument that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's Junky Music Stores, Inc*., 109 F.3d at 286. Here, not only is the customer base similar, but, at one point, Defendant Ahlf was affiliated with, and a representative of, NABA. His job while at NABA required repeated interface with the duplicate pool of customers. Defendant Ahlf admitted that the work he does on behalf of Defendant UMSC is identical to what he did for

---

[2] "**REQUEST NO. 10**: Admit that NABA and UMSC are competing for the same types of customers and businesses.

**RESPONSE**: correct."

[3] "Q.     So you would service -- at North American Business Association, you would service customers that were auto shops and --

A.     Yeah.

Q.     -- you know, whatever, movie theaters, and whatever else. It – to your point, any business that used debit or credit cards --

A.     Correct.

Q.     -- that's who you would work with?

A.     That was the target audience.

Q.     And the target audience for United Merchant Services Club, it's the same?

A.     Correct."

NABA.[4] By contacting customers using similar means, and by using a mark that is nearly identical to NABA's mark, Defendant Ahlf could confuse even the savviest consumer. Even more, he admits that when switching over the customers, he (at best, for him) never expressly mentioned or explained that NABA and Defendant UMSC were distinct entities.[5]

Seventh, Defendant Ahlf specifically chose the name UNITED MERCHANT SERVICES CLUB, LLC as a way to "pay tribute" to his adoptive father, Jonathan Ahlf. *See* DE 60-6 at 19. This inherently shows a connection between NABA's mark and Defendant UMSC. Turning to the eighth and final factor, NABA makes no argument it was likely to expand product lines. However, every other factor weighs in favor of NABA.

Ultimately, in light of the above analysis, it is clear that there is no genuine dispute of material fact as to the likelihood of confusion. Defendant Ahlf's sparse response does nothing to rebut this finding. Therefore, "it is appropriate for the court to determine, as a matter of law, whether Plaintiff has established a likelihood of confusion." *La Bamba Licensing, LLC*, 295 F.Supp.3d at 770. The Court finds that there is a likelihood of confusion, and relative to the mark, between the services provided by NABA and the services provided by Defendant UMSC. Seven out of the eight factors weigh in favor of this finding. Most convincing is the similarity of the marks, the relatedness of the goods provided, the identical marketing channels used by both companies, and the degree of consumer care. Accordingly, summary judgment against Defendant

---

[4] When asked what his position at United Merchant involved, Defendant Ahlf stated that he did "[t]he same thing [he is] doing now" at Defendant United Merchant: "Sign clients up to Payroc, Merchant Lynx, whoever it might me." *See* DE 60-6 at 9.

[5] "**REQUEST NO. 18**: Admit that you did not inform the Merchants that they were being transferred from payment processing platforms set up by NABA to payment processing platforms set up by USMC.

**RESPONSE**: They were informed they would be switched from Payroc to merchant Lynx. NABA and UMSC were never mentioned." *See* DE 60-5 at 9.

Ahlf is appropriate on NABA's unfair competition claims under Section 43(a) of the Lanham Act and (per the same analysis) Kentucky law.

### d.   False Advertising Under the Lanham Act (15 U.S.C. § 1125(a)(1)(B))

The Court now turns to NABA's false advertising claim. The Sixth Circuit created a five-part test for establishing a false advertising claim under the Lanham Act: "1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff." *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999) (citations omitted). The Court will address each element in turn.

### i.   False or Misleading Statements of Fact

To establish the first element, a plaintiff can either show that the defendant's advertising is "literally false" or is misleading. *See Wysong Corporation v. APN, Inc. (17-1975)*, 889 F.3d 267, 270-71 (6th Cir. 2018). To prevail on a "misleading" statement of fact theory, "the claimant must prove that a 'significant portion' of reasonable consumers were *actually* deceived by the defendant's messaging." *Id*. at 271 (quoting *Am. Council*, 185 F.3d at 616) (emphasis in original).

As already discussed, Defendant Ahlf admitted to not specifically informing the relevant customers that he was working on behalf of Defendant UMSC when he transferred their payment processing accounts to another (and competing) processing platform. *See* DE 60-5 at 9. He used his NABA email and phone number to contact the customers when attempting to transfer their accounts, thus implying that his actions were on behalf of NABA. These actions, at the very least,

15

were misleading. His deception, however, went further. In the Fugate affidavit, Shawn Fugate, owner of Pineville Pawn Shop, stated that Defendant Ahlf told him that his account needed to be updated and "represented to [him] that he was still working for NABA and that any updates to [Fugate's company's] payment processing account would still be through NABA." *See* DE 21-1 at 2. While Defendant Ahlf still worked for NABA when he contacted Fugate, he was not working on NABA's behalf. His representation to Fugate to the contrary was false. Defendant Ahlf made both false and misleading statements, thus satisfying the first element.

### ii. Deception of the Intended Audience

The second element is whether Defendant Ahlf deceived the intended audience. To show deception, a "plaintiff must present evidence that a 'significant portion' of the consumer population was deceived." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (quoting *Am. Council*, 185 F.3d at 616). When there is evidence that the defendant made "literally false statements, evidence of actual deception is not required." *Am. Council*, 185 F.3d at 618; *see also Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735-36 (6th Cir. 2012); *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 487 F.Supp.2d 861, 886 (E.D. Ky. 2007).

The Court has already found that Defendant Ahlf made false statements, therefore deception is presumed. Even without the presumption, there is evidence of actual deception. First, there is the Fugate affidavit, which is one specific account moved by Defendant Ahlf's deception. Second, there is the clear pattern of contact by Defendant Ahlf to NABA's customers. At least thirteen of NABA's customers allowed their accounts to be transferred to Defendant UMSC after being contacted by Defendant Ahlf. Defendant Ahlf readily admits to transferring those accounts. *See* DE 60-5 at 11-14. He contacted each of the customers in similar ways—either by phone or via

16

e-mail. Without argument or proof to the contrary, the Court determines that each of the other NABA customers was enticed to transfer their accounts the same way Fugate was. Defendant Ahlf's scheme required the false representation that he was working on behalf of NABA. No matter how the record is examined, it is clear that Defendant Ahlf deceived NABA's former customers.

### iii.  Causation

Next, NABA must show causation. Causation combines the third and fifth elements: whether the defendant's "statement is material in that it will likely influence the deceived consumer's purchasing decisions" and whether there is a causal link between the statements and the harm. *Am. Council*, 185 F.3d at 613. "The deception element asks whether the defendant's misstatements caused the consumer to be deceived. The injury element asks whether the defendant's deception of the consumer caused harm to the plaintiff." *Id*. at 613-14.

Causation is easily proven. Again, Defendant Ahlf concedes that he transferred thirteen customer accounts from NABA to Defendant UMSC. At least one customer (Pineville Pawn Shop) states that it allowed the transfer because it believed Defendant Ahlf was working on behalf of NABA. Nothing in the record suggests that the other twelve customers would have consented to the transfer but for Defendant Ahlf's misleading ruse. There is a direct link between Defendant Ahlf's statements and NABA's harm. His actions directly caused those customers to transfer their accounts. While Pineville Pawn Shop returned to NABA, the twelve other customers did not, resulting in a 20% loss in revenue for NABA. *See* DE 60-1. At the time of filing the summary judgment motion, NABA had lost $41,410.22 in income due to Defendant Ahlf's deception.

What's worse, Defendant Ahlf transferred those accounts knowing full well that the events would result in financial harm to NABA.[6] Defendant Ahlf clearly caused harm to NABA.

### iv.  Nexus to Interstate Commerce

The fourth element evaluates whether the statements were introduced into interstate commerce. *See Am. Council*, 185 F.3d at 613. "When e-mails or files attached to them cross state lines, they travel in interstate commerce." *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 803 (6th Cir. 2015). Thus, "the very act of sending an e-mail creates the interstate commerce nexus necessary for federal jurisdiction." *Id*. (citing *Doe v. Smith*, 429 F.3d 706, 709-10 (7th Cir. 2005)). Defendant Ahlf contacted NABA's customers either via phone calls or e-mails. Some of the customers Defendant Ahlf contacted were located outside of Kentucky—for example, Walcott Radio (a company Defendant Ahlf admitted to transferring) is located in Walcott, Iowa. This is sufficient to establish a nexus to interstate commerce.

In light of the foregoing, the Court finds that there is not a genuine dispute of material fact as to any of the elements of false advertising. Standing uncontested, and presenting qualifying merit, the Court grants summary judgment as to NABA's false advertising.

### e.  Breach of the Fiduciary Duty Under Kentucky Common Law

The Court now turns to NABA's breach of fiduciary duty claim. Before addressing the merits of the claim, the Court will first address whether Kentucky law applies, since NABA is a Nevada limited liability company:

> Under Kentucky choice-of-law rules "there is a strong preference ... for applying Kentucky law." *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (W.D. Ky. Sept. 6, 2013) (collecting cases). In general, "a court must apply Kentucky's law when there are not overwhelming interests to the contrary." *Asher*

---

[6] "**REQUEST NO. 16:** Admit that by transferring the Merchants from payment processing accounts set up by NABA to those set up by UMSC, NABA's income was reduced.

**RESPONSE:** Yes the merchant going from Payroc to Merchant lynx did reduce NABA residual." *See* DE 60-5 at 9.

*v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 666 (E.D. Ky. 2010); *see also Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law whenever possible ... if there are sufficient contacts and no overwhelming interests to the contrary."); *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) ("When the court has jurisdiction of the parties its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons."). In other words, Kentucky is "very egocentric or protective concerning choice of law questions." *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994). "The Sixth Circuit has routinely recognized this 'provincial tendency' when applying Kentucky's choice of law rules." *Dukes v. Mid-Eastern Athletic Conference*, No. 3:16-cv-303-RGJ-RSE, 2018 WL 6112415, at *2 (W.D. Ky. Nov. 21, 2018) (collecting cases).

*Novolex Holdings, LLC v. Wurzburger,* Civil Action No. 19-145-DLB-CJS, 2020 WL 4758360, at *4 (E.D. Ky. Aug. 17, 2020). When a tort has been committed, Kentucky law will apply "if there are any 'significant contacts—not necessarily the most significant—with Kentucky.'" *Id*. (citations omitted). Here, even though NABA is a Nevada limited liability company, NABA was based operationally in Williamsburg, Kentucky. *See* DE 60-1 at 3. All the work Jonathan and Nicholas Ahlf did while running the company occurred in or issued from Kentucky. Additionally, Defendant Ahlf's tortious conduct largely occurred in Kentucky. Accordingly, Kentucky law applies to NABA's breach of fiduciary duty claim.

Under Kentucky law, to establish a breach of fiduciary duty claim, a plaintiff must show: "1) the existence of a fiduciary duty; 2) a breach of that duty; 3) and that the breach caused injury to the party to whom the duty was owed." *Seeger Enterprises, Inc. v. Town & Country Bank and Trust Company*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017) (citing *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189 (Ky. 2013)).

In Kentucky, a fiduciary duty is one "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). "Kentucky courts are

> willing to find a fiduciary relationship between an employer and employee when the employee has a position of trust, the freedom of decision, and access to confidential corporate information." *Vivid Impact Co., LLC v. Ellis*, No. 3:17-CV-509-JHM, 2017 WL 5505024, at *3 (W.D. Ky. Nov. 16, 2017) (citation omitted). A "mere employee" is not sufficient to establish fiduciary duties. *Steelvest*, 807 S.W.2d at 483. Those owing a fiduciary duty "should terminate their position/status as directors or officers when they first make arrangements or begin preparations to compete directly with the employer corporation." *Id.* (citation omitted). The duties of good faith and loyalty "are essentially the same as the claim for breach of fiduciary duty ...." *Cap. Creation Co. v. Metro. Life Ins.*, No. 1:90-CV13-22, 1992 WL 218296, at *8 (N.D. Ohio Aug. 26, 1992).

*N. Harris Computer Corporation v. DSI Investments, LLC*, 608 F.Supp.3d 511, 529 (W.D. Ky 2022). There is no question or dispute that Defendant Ahlf was, in the critical period, more than a "mere employee" of NABA. *DSI Investments*, 608 F.Supp.3d at 529. He began working for NABA in 2019. *See* DE 1 at ¶ 39. By 2021, he was the Senior District Manager for NABA. *Id.* at ¶¶ 45; 56. As the Senior District Manager, Defendant Ahlf was placed in a "position of trust." *DSI Investments*, 608 F.Supp.3d at 529. He was then solely responsible for acquiring clients for NABA. *See* DE 60-5 at 15. He was also given "access to confidential corporate information." *Id*. This information included "all Client information, including client lists, phone numbers, and email addresses as well as sensitive business information such as profit margins, rates being charged, residual dollar amounts, equipment being used, access to payment platforms, and marketing materials." *See* DE 1 at ¶ 46. When Defendant Ahlf began creation of Defendant UMSC, a direct competitor to NABA, he should immediately have resigned from his position. He chose not to— instead he abused his position, and the access it gave him, and used it to benefit himself. Defendant Ahlf owed NABA a fiduciary duty, and he breached that duty when, while maintaining fiducial status, he created Defendant UMSC and (using access and information derived from NABA) transferred lucrative client accounts from his employer to his own business. Accordingly, the Court grants summary judgment on NABA's breach of fiduciary duty claim.

## IV.    Damages for NABA

After the Court granted in part NABA's motion for default judgment, *see* DE 24, NABA moved for a damages hearing, *see* DE 41. NABA sought a total of $351,932.52, consisting of compensatory damages, attorney's fees, punitive damages. *See* DE 53 (Pretrial Memorandum). At the damages hearing, the Court awarded NABA: (1) $32,707.03 in damages sustained, enlarged 1.5 times under 15 U.S.C. § 1117, for a total federal damages award of $49,060.54; (2) $65,414.06 in punitive damages; and (3) $3,793.33 in costs recoverable under the Lanham Act. *See* DE 56 (Minute Entry). The Court also found an award of reasonable attorney's fees warranted but reserved a finding as to the specific sum pending a review of NABA's invoices. *See id.* The Court directed NABA to tender invoices memorializing "time related to the complaint, service of the entity, securing of the default judgment, securing of the injunction, and proof of entity-related damages." *Id.* On January 12, 2023, NABA filed invoices purporting to support $52,274.00 in reasonable attorney's fees. *See* DE 58-2 (Invoice Summary).

The Court, accordingly, must determine whether the requested award is, as to the reserved issues, reasonable. "A reasonable fee 'is adequately compensatory to attract competent counsel'" but avoids "'producing a windfall for lawyers.'" *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). To determine this, the Court employs the "'lodestar formula,' which calls for multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Chimney Safety Inst. of Am. v. First Call Chimney Serv., LLC*, No. 3:19-CV-705-CRS, 2020 WL 3065624, at *1 (W.D. Ky. June 9, 2020); *see also Hensley v. Eckerhart*, 103 S. Ct. 1933, 1939 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 103 S. Ct. at 1039. However, the Court has "broad discretion to determine what constitutes a reasonable

hourly rate for an attorney." *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 103 S. Ct. at 1939.

Here, counsel for NABA billed under the following hourly rates: $100 for law clerks, $125 for paralegals, $275 for associates, and between $310 and $450 for partners. *See* DE 58-1 at 3 (Supplemental Declaration). NABA submits that these "hourly rates are reasonable for attorneys, paralegals, and law clerks performing similar tasks in the community." DE 58-1 at 3. The Court agrees. Other courts in the Sixth Circuit have found similar rates reasonable in the context of trademark infringement cases. *See, e.g.*, *WHG TM Corp. v. Patel*, No. 5:07-CV-3087, 2008 WL 495794, at *2 (N.D. Ohio Feb. 22, 2008) (finding the hourly rates for plaintiffs' attorneys— Michael J. Garvin (Partner) $342.00, Mark A. Watkins (Partner) $346.50, Shannon V. McCue (Associate) $279.00, Elizabeth Tropf (Paralegal) $148.50, Jason Strobel (Law Clerk) $130.00, Susan B. Hersch (Law Librarian) $100.00—"reasonable hourly rates, consistent with the prevailing hourly rates in Cleveland, OH"); *Noco Co. v. Ko*, No. 1:19-CV-1547, 2021 WL 3725655, at *2-3 (N.D. Ohio Aug. 23, 2021) (finding hourly rates ranging from $85-$440 reasonable for legal services); *La Bamba Licensing LLC v. La Bama Authentic Mexican Cuisine, Inc.*, No. 3:16-CV-527-CRS-CHL, 2022 WL 2402659, at *10 (W.D. Ky. Mar. 31, 2022) (finding hourly rates ranging from $200-$295 reasonable for lawyers); *North Atlantic Operating Co. Inc. v. Scott*, 2020 WL 3481647, at *5 (E.D. Mich. June 26, 2020) (finding $187.50 a reasonable rate for paralegals).

NABA attached invoicing to support a sum of $52,274 in attorney's fees and indicates, per the Court's prior directive, *see* DE 56, that this sum only includes services relating to litigation against Defendant UMSC and not Defendant Nicholas Ahlf. *See* DE 58-1 at 2. NABA further

indicates that entries between March, April, June, and September 2022, though referencing Nicholas Ahlf, relate to "both Nicholas and his company UMSC." *Id.* NABA highlighted portions that do *not* pertain to the entity Defendant. *See id.* at 2 ("Counsel has included all time entries in the case but notes that the highlighted entries are not included in the total, as these entries relate to litigating against Defendant Nicholas Ahlf[.]").

The Court notes that NABA does not provide a mathematical breakdown of its calculation, so the Court cannot ascertain exactly how it arrived at $52,274. However, the Court has independently reviewed the invoices and, excluding highlighted entries and entries that indicate "No Charge[,]" *see, e.g.*, DE 58-2 at 15, the Court arrives at a total of $57,056.50 in fees. Further, there are several entries that NABA appears to include in its total that seemingly only relate to Defendant Nicholas Ahlf. These, per the Court's DE 56 directive, should be excluded. Specifically, one entry from October 2022 bills 1 hour (at an hourly rate of $340) for "review[ing] and revis[ing] discovery requests to Nicholas Ahlf." DE 58-2 at 27. Further, two entries from November 2022 bill 2.7 hours (0.2 hours at an hourly rate of $340 and 2.50 hours at an hourly rate of $275) relating to NABA's motion to compel, *see* DE 44, which concerns only Defendant Nicholas Ahlf. *See* DE 44 (Motion to compel Ahlf to "provide responses to written discovery responses and production of documents requested under Rules 33 and 34"); 58-2 at 31 (November 11, 2022: "Review and revise Motion to Compel"); *id.* (November 11, 2022: "Prepare motion to compel discovery from Nicholas, create and organize exhibits of email communications, file the same"). The Court accordingly excludes this time and the corresponding sum of $1,197.50. This results in a total award of $55,859. The Court finds that amount consistent with its prior ruling, its resolution of the reserved issues, and its independent analysis of the billing record. However, the Court will cap the entity award at the substantiated and sought amount, $52,274.

The Court will base its individual awards, as to damages and fees, on the record to date, including the unopposed updates verified in the summary judgment record. This means $41,410.22 as the base loss figure, subject to the 1.5 Lanham Act multiplier. The Court will use the same base figure for proven Kentucky-law damages, then subject to the same 2X punitive damages multiplier on the individual state torts. The fee update, again as documented, will be plenary as to Ahlf individually.

**V.   Conclusion**

In light of the foregoing, the Court **GRANTS** DE 60. The Court will enter judgment against Defendant Ahlf on Count 1, 2, 3, and 6 the Complaint. Counts 4, 5, 7, and 8 remain against Defendant Ahlf and Counts 4, 5, and 8 remain against Defendant UMSC. Surely, and the Court trusts, Plaintiff does not intend to pursue these residual and duplicative claims. The judgment cannot be final until such claims are concluded. Plaintiff shall state its intentions within ten days of entry of this Order.

Additionally, the Court awards NABA the following:

Against USMC, based on DE 56 and the Court's prior rulings and current analysis:

1. Under the Lanham Act claims, $49,060.54;
2. Under the Kentucky law claim, $32,707.03;
3. As punitive damages, under Kentucky law, $65,414.06
4. As Lanham Act costs, $3,793.33 and
5. For attorney fees as to all adjudicated claims, $52,274.

Against Defendant Ahlf, based on the prior damages record as updated and refined via the summary judgment briefing and the Court's rulings:

1. Under the Lanham Act claims, $62,115.33;
2. Under the Kentucky law claims, $41,410.22;
3. As punitive damages, under Kentucky law, $82,820.44;
4. As Lanham Act costs, $3,793.33;

5.  For attorney fees as to all adjudicated claims, $70,452.50.[7]

This the 25th day of March, 2024.

Signed By:

*Robert E. Wier*

United States District Judge

---

[7] The Court finds it proper to hold Ahlf, who authored the entirety of these wrongs, liable for all fees.  The entity claims resulted in earlier adjudication and a more cabined litigation; Ahlf, though, has been a part every step of the way.  The full fee responsibility is wholly appropriate, and the revised accounting figures gird the totals.   The award reflects the fee totals substantiated by affidavit and submitted documentation, and the Court has reviewed the materials for reasonableness and accuracy.